# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| EXIDE TECHNOLOGIES, | § | |
| Plaintiff, | § § § | |
| v. | § § | Case No. 4:17-CV-311 |
| THE CITY OF FRISCO, FRISCO ECONOMIC DEVELOPMENT CORPORATION, and FRISCO COMMUNITY DEVELOPMENT CORPORATION, | § § § § § § | |
| Defendants. | § § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On November 27, 2017, the report of the Magistrate Judge was entered containing proposed findings of fact and recommendations (s*ee* Dkt. #34) that Defendants The City of Frisco, Texas (the "City" or "Frisco"), the Frisco Economic Development Corporation ("FEDC"), and the Frisco Community Development Corporation's ("FCDC") (collectively, "Defendants") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion") (Dkt. #14) be **GRANTED IN PART** and **DENIED IN PART**. The Court recommended that Defendants' Motion (Dkt. #14) be **GRANTED** as to Exide's recovery of attorneys' fees against the City and **DENIED** in all other respects.

Defendants filed objections to the report (the "Objections") (Dkt. #35), and Plaintiff Exide Technologies ("Exide" or "Plaintiff") filed a reply (Dkt. #37). The Court has made a *de novo* review of the objections raised by Defendants and is of the opinion that the findings and

conclusions of the Magistrate Judge are correct and the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

## I. BACKGROUND

This case arises from a land-purchase contractual dispute between Exide and Defendants. Since 1964, Exide operated a battery recycling facility (the "Recycling Facility" or the "Facility") in Frisco, near the intersection of the Dallas North Tollway and Cotton Gin Road. The Facility was situated on approximately ninety acres of land (referred to as the "Bowtie Parcel," due to its shape) (Dkt. #1 at ¶21). Surrounding the Bowtie Parcel is 180 acres of undeveloped land (known as the "J Parcel," due to its shape). *Id.* a ¶22. The J Parcel had acted as a buffer zone between the Recycling Facility and the surrounding properties. *Id.* The two parcels are collectively referred to herein as the "Property."

After an "agreement in principle" failed to come to fruition, both the City and Exide threatened litigation against each other (*see id.* at ¶¶ 17-19; *see also* Dkt. #23 at 9), and ultimately entered into a "Master Settlement Agreement" (the "MSA"), under which Exide agreed to: (1) close the Facility; (2) remediate the J Parcel; and (3) sell the J Parcel in two tracts to FEDC and FCDC for a combined total of $45 million.[1] Dkt. #1 at ¶22. Prior to the sale, and pursuant to the MSA, Exide agreed that, with the City's financial assistance, it would remediate the J Parcel under the Texas Commission on Environmental Quality ("TCEQ") voluntary cleanup program ("VCP"). *See id.* at ¶2. Defendants were required to place $1 million in "Remediation Funds" into an escrow account for Exide to use in remediation efforts. *Id.* at ¶27; *see also* Dkt. #14-3 at 13-14, MSA Section 5.2. Defendants also agreed they would deposit up to an additional $500,000.00, after

---

[1] The MSA provided that Exide would sell the J Parcel in two tracts—one tract to FEDC for $27 million, and the other tract to FCDC for $18 million, for a combined total of $45 million. Dkt. 1 at ¶22.

which Exide and Defendants would share equally in any further costs. Dkts. #1 at ¶29; #14-3 at 13-14. The purchase price for the J Parcel was held in escrow along with the executed deeds until the Closing Date, which will occur after remediation of the J Parcel is complete and the TCEQ issues a confirmatory certificate referred to as a "Certificate of Completion." Dkt. 1 at ¶22.

In December 2016, Exide notified the City that the estimated costs of the J Parcel remediation would total $2,706,000.00, and requested the City to remit an additional $500,000.00, to the Remediation Funds Escrow Account. *Id*. at ¶30. According to Exide, the City refused to provide the additional funds—in spite of "the voluminous supporting information Exide had provided." *Id*. at ¶¶31-37.

Exide brought the present lawsuit on May 9, 2017, alleging breach of contract against Defendants based on the City's denial of Exide's request for the additional $500,000.00 required to continue the remediation efforts, in violation of the MSA. *Id*. at ¶59. Exide further alleges the City breached the MSA by obstructing Exide's efforts to obtain a wastewater discharge permit from the North Texas Municipal Water District (the "NTMWD"), as the parties' agreement states that the City is supposed to "cooperate and assist Exide in its permitting needs." *Id*. at ¶60. Exide also seeks reasonable attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code. *Id* at ¶61.

Defendants seek dismissal of the lawsuit pursuant to Rule 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, asserting governmental immunity and arguing that Exide's complaint does not establish the legislature's consent to the lawsuit and neither the City, nor the FCDC, nor the FEDC, has waived immunity from suit. *See* Dkt. 14 at 9. Defendants also argue that Exide is not entitled to recover attorneys' fees. *See id*.

## II. DISCUSSION

The Court finds Defendants' objections are essentially the same arguments presented in their Motion (Dkt. #14) and reply (Dkt. #23) and which are extensively addressed in the Magistrate Judge's report (the "Report") based on her review of the briefing and the evidence, as well as oral argument. The Magistrate Judge's conclusion, that Defendants' entry into the MSA and the breaches thereof that form the basis of Plaintiff's claims involve the exercise of proprietary functions for which there is no immunity, is well reasoned and supported by the record.

### A. THE CITY'S IMMUNITY FROM SUIT

Defendants first object to the Magistrate Judge's determination that the City is not immune from Plaintiff's suit. *See* Dkt. #35 at 1-2. Defendants argue the Magistrate Judge's conclusions arise from the "faulty premise" that "Defendants' 'ultimate goal' was to purchase and develop land." *Id.* at 2.

As explained in the Report, the issue of the City's immunity from suit turns on whether the City was exercising governmental functions or proprietary functions when it breached the MSA. *See* Dkt. 34 at 10; *Wasson Interests, Ltd. v. City of Jacksonville* (*Wasson I*), 489 S.W.3d 427, 430 (Tex. 2016), *reh'g denied* (June 3, 2016). The Report went on to explain that the relevant issue is not whether the City exercised any governmental function in entering into the contract, or whether any part of the contract implicates any governmental function, but rather, whether the City was performing a governmental function in breaching the contract. Dkt. 34 at 10 (citing *Wasson I*, 489 S.W.3d at 439; *Canario's, Inc. v. City of Austin*, 2015 WL 5096650, at *2 (Tex. App.—Austin 2015, pet. denied)).

The Report provides detailed rationale and legal authority to support the Magistrate Judge's rejection of Defendants' arguments attempting to categorize the MSA in terms of the City's

exercise of governmental functions. *See* Dkt. #34 at 11-12. Although Defendants' Objection points to the City's efforts to address the environmental concerns from Plaintiff's battery plant as an exercise of the governmental function of health and sanitation (*see* Dkt. #35 at 2-3), the Magistrate Judge explained the basis for her conclusion that the MSA's requirement that Plaintiff and Defendants submit a joint application to the TCEQ's VCP for the cleanup of the J Parcel was primarily to facilitate the real estate transaction. *See* Dkt. #34 at 11. And although Defendants take issue with the term "$5 Billion Mile" (Dkt. 35 at 3), the Report—and the record—reveal numerous examples of the City's characterization of its arrangement to purchase the Property as an economic investment that would have a positive return for the City. *See* Dkt. #34 at 11 (citing Dkt. #23-4).

Based on the foregoing, the Court finds no error in the Magistrate Judge's finding that, accepting Plaintiff's allegations as true—as the Court is required to do at the motion to dismiss stage—the alleged breach involved primarily proprietary functions (Dkt. 12), and it is not "beyond doubt" that Plaintiff cannot prove a plausible set of facts to support its breach of contract claim. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.2008). Accordingly, this Objection is **OVERRULED**.

### B. SETTLEMENT OF CLAIMS NOT IMMUNE FROM SUIT

The Court similarly finds no error with the Magistrate Judge's conclusion that the City has no immunity for breach of the MSA because the MSA was a settlement of claims for which the City had no immunity. *See* Dkt. #34 at 13. Although Defendants argue that the Magistrate Judge's reliance on *Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002) was misplaced, they offer no countervailing authority. Defendants' position—that *Lawson* is inapplicable because no lawsuit was actually filed, and as a result, there can be settlement of claims—is unpersuasive. As noted in the Report, *Lawson* "has been adopted and applied by several courts of appeals and

has never been rejected." Dkt. #34 at n.5 (citing *Canadian River Mun. Water Auth. v. Hayhook, Ltd*, 469 S.W.3d 301, 303-04 (Tex. App.—Amarillo 2015, pet. denied); *Harris County Hous. Auth. v. Rankin*, 414 S.W.3d 198, 203 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 366-67 (Tex. App.—Fort Worth 2009, no pet.); *City of Carrollton v. Singer*, 232 S.W.3d 790, 796 (Tex. App.—Fort Worth 2007, pet. denied); *Livecchi v. City of Grand Prairie*, 109 S.W.3d 920, 922 (Tex. App.—Dallas 2003, pet. dism'd)).

Having reviewed these cases, the Court finds that *Lawson* and its progeny appear to focus not on whether a suit was actually filed, but rather, whether the governmental entity was exposed to a claim for which it had no immunity and then settled that claim. Here, the record establishes that Defendants were exposed to statutory vested rights claims, constitutional claims, takings claims, and declaratory judgment claims. *See* Dkt. #34 at n.5; Dkt. #23 at 31-32. Although Defendants now dispute the Magistrate Judge's conclusion that Defendants did not contest that many of the released claims are claims for which the City has no immunity (*see* Dkt. #35 at 6), they fail to point to any place in the briefing where they made such an argument.

Furthermore, even had Defendants presented such an argument, it is not likely that a different outcome would have followed, given that the issue before the court is a motion to dismiss, and the Court must accept as true all well-pleaded facts contained in Plaintiff's complaint and view them in the light most favorable to Plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Accordingly, the Court finds the Magistrate Judge did not err in finding there is no immunity because the MSA was a settlement of claims for which the City had no immunity, and this Objection is likewise **OVERRULED**.

### C. IMMUNITY OF THE FEDC AND THE FCDC

Defendants' final Objection challenges the Magistrate Judge's conclusion that the FEDC and the FCDC are also not immune from Plaintiff's lawsuit. See Dkt. #35 at 7-8. The Report explains that the FEDC and the FCDC, like the City, have no immunity because they exercised no governmental function in connection with the MSA, or the claims asserted in this lawsuit. Defendants fail to point out how there was any error in the Magistrate Judge's conclusion. Therefore, this Objection is also **OVERRULED**.

### I. CONCLUSION

Having found that all of Defendants' Objections are without merit, the Magistrate Judge's Report is **ADOPTED** as the opinion of the Court, and Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. #14) is **GRANTED** as to Exide's recovery of attorneys' fees against the City and **DENIED** in all other respects.

IT IS SO ORDERED.
SIGNED this 29th day of January, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE